**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

Nos. 09-1477
        09-1478

ISAIAS PEREZ SOCOP,
ISABEL BOJ XUM,

Petitioners,

v.

ERIC H. HOLDER, JR., United States Attorney General,

Respondent.

PETITIONS FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Boudin and Howard, <u>Circuit Judges</u>.

<u>Stephen M. Born</u> and <u>Mills and Born, Attorneys at Law</u> were on brief for petitioners.
<u>Tony West</u>, Assistant Attorney General, <u>Richard M. Evans</u>, Assistant Director and <u>Kevin J. Conway</u>, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, were on brief for respondent.

January 31, 2011

**HOWARD**, <u>Circuit Judge</u>.  Isaias Perez Socop ("Perez") and his spouse Isabel Boj Xum ("Boj"), both natives and citizens of Guatemala, entered the United States illegally and were placed in removal proceedings.  Conceding removability, both sought withholding of removal on the ground that it was more likely than not that they would be persecuted if they returned to Guatemala.

Claims for withholding of removal require the persecution in question to be "on account of" one of five protected grounds: "race, religion, nationality, membership in a particular social group or political opinion."  <u>See</u> 8 U.S.C. § 1231(b)(3)(A).  In addition to each petitioner's claims based on asserted group membership, the petitioners also claimed that Perez's resistance to gang recruitment qualified as "political opinion" for which they faced persecution.

An Immigration Judge ("IJ") denied their applications, and the Board of Immigration Appeals ("BIA") affirmed the denials. The Board's rationale was the same in both cases:  the petitioners had failed to identify a protected ground on which to base their withholding of removal claims.  The BIA concluded that the social groups in which the petitioners claimed membership were not cognizable "particular social group[s]" within the meaning of the statute.  The Board further concluded that Perez's resistance to gang recruitment, standing alone, did not qualify as a "political

opinion" and that the gangs did not impute a political opinion to his spouse based on this resistance.

Perez and Boj individually petitioned for judicial review of the BIA's orders. We deny the petitions, except for an unexhausted claim which we dismiss.

## I. Facts

The facts presented here are undisputed. Both Perez and Boj were born in a small Guatemalan village to families of indigenous Mayan Quiche ancestry. They married at a young age. At some point, Perez began a construction job in Guatemala City, returning to his village and family on weekends. While he was working at this job, members from a gang -- the "Maras" -- approached him and attempted to recruit him. Perez refused to join, testifying later that he was opposed to the gang's practices and values. His refusal to join resulted in the gang demanding half of his weekly salary as "penitence." Perez paid this money, fearing that if he did not pay, the gang would harm him or his family as it had others who refused to make payments.

Perez paid this money for approximately five years. In 2000, however, tired of paying the gang, Perez decided to leave for the United States. Because he could not afford to bring his wife and two children with him, Perez planned to send for them when he had earned enough money.

When the extorted payments ceased, the gang sent one of its members, Mauricio Ismael, to harass Boj. Ismael raped Boj repeatedly over the course of three months. Boj became pregnant as a result but miscarried after being beaten by Ismael. Boj never reported these crimes to the government in Guatemala, because, she testified, of her belief that the government ignores complaints from indigenous women.

Eventually, Perez sent money to Boj so that she and their children could join him in the United States. After her arrival, Boj was treated for mental health problems arising from her experiences in Guatemala.

In support of their requests for withholding of removal, Perez and Boj submitted documentary evidence of country conditions in Guatemala, including a U.S. Department of State Country Report for 2006. This evidence revealed that "societal violence [in Guatemala] was widespread" with non-state actors (including gangs) committing "hundreds of killings and other crimes." The gangs preyed on women in particular, with authorities attributing to gangs many of the gender-based crimes, including sexual assault and murder. The evidence also indicated, however, that the Guatemalan government had made efforts to combat the gang menace. A 2005 report stated that Guatemala's president supported "both strengthening law enforcement capacity to combat criminal gangs, and expanding gang prevention and social rehabilitation programs."

It also noted that the "Guatemalan Congress is considering tough anti-gang legislation that would try gang members ages 12 and older as adults, and establish lengthy sentences for gang leaders."

As stated, the IJ rejected the petitioners' withholding claims, and the BIA affirmed.

## II. Discussion

### A. Standards of review

We review the agency's findings of fact under the "substantial evidence" standard, upholding those findings "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009) (internal quotation marks omitted). This standard of review is deferential; we will reverse only if the record evidence would compel a reasonable factfinder to make a contrary determination. 8 U.S.C. § 1252(b)(4)(B). We review the agency's abstract legal determinations de novo. Lopez-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009). We accord deference, however, to the agency's reasonable interpretations of statutes and regulations that fall within its purview. Id.

In the cases before us, the BIA affirmed the decisions of the IJ with written decisions of its own. In such cases, we review the BIA's decisions, in addition to any portions of the IJ's decisions adopted by the Board. Kho v. Keisler, 505 F.3d 50, 53 (1st Cir. 2007).

-5-

## B. Withholding of removal

To qualify for withholding of removal, an alien must prove that, if she is repatriated, it is more likely than not that she will be persecuted on account of one of five protected grounds: race, religion, nationality, membership in a particular social group or political opinion. Pan v. Gonzales, 489 F.3d 80, 85-86 (1st Cir. 2007). To qualify as persecution, a petitioner's experience "must rise above unpleasantness, harassment, and even basic suffering." Decky v. Holder, 587 F.3d 104, 110 (1st Cir. 2009). Moreover, "[p]ersecution, within the context of the immigration statutes, does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id. (quoting Kho v. Keisler, 505 F.3d 50, 58 (1st Cir. 2007)).

### 1. Perez

Perez claimed that he was persecuted and would face future persecution if returned to Guatemala due to his social group membership and because of his political opinions regarding gangs. We address these contentions in turn.

#### a. Particular social groups

The record reflects that the only social group membership assessed by the IJ was "Guatemalans returning from the United States" who, according to Perez's testimony, would be harmed by gangs because they would be perceived to have money or valuable

goods.  In addition, the BIA interpreted Perez's petition as alleging that he was a member of a group of "young indigenous Guatemalan males who expressly oppose the practices and values of the MS gang and wish to protect their families against such practices."

On appeal, however, Perez pursues a slightly different tack.  To begin with, he does not address the "returning expatriate from the United States" claim in his brief. That argument is therefore waived.  Le Bin Zhu v. Holder, 622 F.3d 87, 91 (1st Cir. 2010).[1]  Next, in addition to membership in the gang-opposition group, he also claims on appeal membership in a particular social group as the husband of a rural, indigenous woman whose family has opposed gang members.  As this claim was not presented to the IJ or BIA,  we do not have jurisdiction to review it.  See 8 U.S.C. § 1252(d)(1); Ahmed v. Holder, 611 F.3d 90, 97 (1st Cir. 2010) ("[A]rguments not made before the BIA may not make their debut in a petition for judicial review . . . .").

Turning to the claim properly before us, the BIA found that Perez's gang opposition did not make him part of a social

---

[1]Even if we were to consider this claim, the Board's conclusion that gang members target anyone they believe can provide them with money or valuables is well-supported by the record.  As such, its conclusion that Perez would not be targeted "on account of" his membership in a group is unassailable.  See Caal-Tiul v. Holder, 582 F.3d 92, 95 (1st Cir. 2009) ("[S]ome social, gender, and economic groupings are almost always more vulnerable to crime and predation.  This does not by itself amount to persecution . . . on one of the specific grounds required by the statute.")

group protected by immigration laws. The Board relied on its decision in Matter of S-E-G, et al., 24 I. & N. Dec. 579 (BIA 2008), in which the Board held that Salvadoran youths who resisted gang recruitment do not constitute a particular social group. We find no error in applying controlling BIA case law to the Guatemalan petitioner. See Larios v. Holder, 608 F.3d 105, 109 (1st Cir. 2010) (approving BIA application of Matter of S-E-G to Guatemalan petitioner claiming membership in group of Guatemalan gang resistors).[2]

### b. Political opinion

Perez's withholding of removal claim premised on his alleged political opinions fares no better. The BIA concluded, based on its decision in Matter of E-A-G, 24 I. & N. Dec. 591 (BIA 2008), that Perez's refusal to join a gang, without more, did not qualify as the expression of a political opinion. This conclusion is supportable. In addition to the Board's own precedent, to which we owe some deference, see Larios, 608 F.3d at 107, the Supreme

---

[2]In July 2009, a few months after the BIA decision in this matter, the BIA in Matter of S-E-G granted the parties' joint motion to reopen and remand the matter so that the IJ could administratively close the proceedings. The petitioners suggest that this undermines the BIA's reliance on Matter of S-E-G, but they have provided us with no indication that the BIA has reconsidered the precedential value of Matter of S-E-G. Moreover, in addition to our decision in Larios, several other circuits have continued to apply Matter of S-E-G to factual scenarios similar to those presented in this case. See, e.g., Lizama v. Holder, No. 09-2027, 2011 WL 149874 at *6 (4th Cir. Jan. 19, 2011); Bonilla-Morales v. Holder, 607 F.3d 1132, 1137 (6th Cir. 2010) (dicta); Lushaj v. Holder, 380 Fed. Appx. 41, 43 (2nd Cir. 2010).

Court's opinion in INS v. Elias-Zacarias, 502 U.S. 478 (1992), is on point. In that case, the Court explained that a petitioner's resistance to recruitment into a guerilla movement, without more, did not qualify as the expression of a political opinion. Id. at 481-82. So it is here. Nothing in the record suggests that Perez outwardly expressed any anti-gang message or that his resistance to the gang was politically motivated. The petitioner's reliance on his mere resistance thus falls short.

## 2. Boj

Boj also seeks withholding of removal due to persecution on account of her membership in certain social groups and her political views. We address the two categories seriatim.

### a. Social groups

Boj claims that she suffered past persecution and will likely suffer persecution upon her return to Guatemala due to her membership in two particular social groups: 1) young Guatemalan indigenous females whose family members have expressly opposed gang practices and values; and 2) young indigenous Guatemalan women who are not protected from gangs by Guatemalan authorities.[3]

As to the first putative group, the BIA used the same reasoning that it did in rejecting Perez's claim: that resistance to gang entreaties does not constitute a social group. For the

---

[3]The BIA addressed a "returning expatriate" claim similar to Perez's. As that issue has not been raised on appeal, it is waived.

same reasons set forth in our discussion of Perez's claim, we decline to disturb the BIA's conclusion. The BIA approached the second alleged group differently. Without necessarily deciding whether the stated categories of females qualified as a particular social group, the Board concluded that Boj had failed to show that the claimed persecution was "on account" of that group's characteristics. We agree.

To make out a successful withholding of removal claim, Boj must satisfy a nexus requirement, that is, she needs to establish that the persecution feared will be on account of a protected ground. Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008). The BIA determined that Boj had failed to establish that the gang members harmed her because of her status as a Guatemalan indigenous female. This conclusion is fully supported by the record. The testimony of the petitioners indicates that the gang members targeted Boj because her husband stopped making extortion payments to them, not because she was an indigenous female. Accordingly, the BIA's decision stands.

b. Political opinion

For her part, Boj claims that gang members imputed an anti-gang political opinion to her when her husband refused to join them and stopped paying them money. Although an imputed political opinion may form the basis for a withholding claim, Vasquez v. INS, 177 F.3d 62, 65 (1st Cir. 1999), nothing in the record indicates

-10-

that the gang members imputed an anti-gang political opinion to Boj. And, as noted, nothing about Perez's resistance to the gang would lead the gang's members to attribute a political opinion to him or to his wife. The BIA's decision on this issue easily clears the "substantial evidence" hurdle.[4]

As a coda to Boj's claim, our decision here is not in any way an attempt to downplay the horrors that she endured. According to the reports in the record, however, the Guatemalan government has been acting to stem the tide of violence against women. Our sympathies cannot substitute for the "specific grounds required by the statute." Caal-Tiul, 582 F.2d at 95.

### III. Conclusion

For the reasons provided above, the petitions are **dismissed in part** and are otherwise **denied**.

---

[4]Both petitioners advance an unexhausted challenge to the BIA's requirement that a particular social group be socially visible. We cannot entertain such an unexhausted challenge, see Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007).

-11-